Richard SUHRE, Plaintiff,

v.

The BOARD OF COMMISSIONERS and the Manager of Haywood County, North Carolina, Defendants.

Civ. No. 1:94CV179.

United States District Court, W.D. North Carolina, Asheville Division.

June 28, 1995.

928

George Daly, Charlotte, NC, for plaintiff.

Gregory D. Smith, Clarksville, TN, for Rutherford Institute, an interested party.

Roy H. Patton, Jr., Leon M. Killian, III, Stephen G. Ellis, Waynesville, NC, and Jonathan D. Sasser, Raleigh, NC, for defendants.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the parties' objections to the Memorandum and Recommendation of Chief United States Magistrate Judge J. Toliver Davis. Upon consideration of the objections and the record below, this Court determined that matters outside the pleadings had been submitted in connection with Defendants' motion to dismiss pursuant to Rule 12(b)(6). Thus, the motion was converted to one for summary judgment, notice thereof was provided, and the parties were given an opportunity to file opposition. **Order, filed June 2, 1995.** The Defendants' motion to dismiss, converted to one for summary judgment, will be granted.

## I. STANDARD OF REVIEW

The Court has reviewed *de novo* those portions of the record and pleadings to which objections have been raised. 28 U.S.C. § 636(b). In addition, the Court has conducted a review of the motion as converted and the filings made in opposition pursuant to the standard applicable to summary judgment motions.

"A motion for summary judgment is appropriate in any civil action in which there is no genuine issue of material fact and one party is entitled to judgment as a matter of law." Shepard's, *Motions in Federal Court*, § 9.17 (2d ed. 1991). The party moving for summary judgment has the burden of showing that there are no facts, combination of facts or evidence supporting the nonmoving party's case. *Id.*, at § 9.23. In ruling on such a motion, the Court will consider that

> [t]here is no genuine issue of material fact, and summary judgment is therefore appropriate, when the record as a whole could not lead a rational trier of fact to find for the nonmoving party.

*Id.*, at § 9.27.

In ruling on the pending motion, the Court will view the pleadings and material presented in the light most favorable to the Plaintiff, as the nonmoving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *on remand, In re Japanese Electronic Products Antitrust Litigation*, 807 F.2d 44 (3d Cir.1986), *cert. denied, Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987).

## II. FACTUAL BACKGROUND

In ruling on the motion, the Court construes the facts as alleged in the third amended complaint most favorably to the non-moving party. *Id.* Plaintiff is a resident of Haywood County, North Carolina, and has had occasion more than once to attend personal legal matters within the Haywood County Courthouse. Located within the courtroom of that building, behind the bench at which the presiding judge holds court, is a bas-relief of "Lady Justice," blindfolded and holding the scales of justice. On either side of her arms are abridged versions of the Ten Commandments. The wording thereof is clearly visible.

Plaintiff, an avowed atheist, is personally offended by the presence of the Ten Commandments inside the courtroom.[1] In addi-

---

1. It does not appear from the pleadings that Plaintiff takes exception to the presence of "Lady Justice" or the depiction of justice in the form of a woman.

tion, Plaintiff has been prosecuted in two criminal trials conducted in this courtroom. On one of those occasions, Plaintiff claims his refusal to swear on the Bible when presented as a witness, in conjunction with the presence of the Ten Commandments, induced the jury to find him guilty of violating the first commandment.[2] In short, Plaintiff claims he was found guilty of the offense charged not because of his guilt but because of his atheism.

In Plaintiff's suit brought pursuant to 42 U.S.C. § 1983, he maintains that "[t]he continued maintenance of the Ten Commandments violates the First and Fourteenth Amendments to the United States Constitution." Third Amended Complaint, at 4. As relief, Plaintiff seeks the removal of the Ten Commandments from the courtroom, declaratory judgment that continued maintenance thereof would be unconstitutional, and an award of attorney's fees.

### III. OBJECTIONS

Plaintiff and Defendants have filed objections. Defendants' objections may be summarized as follows:

1. the Magistrate Judge's conclusion that the Defendants' actions were administrative is erroneous and relies on precedent from a different circuit; and

2. the conclusion that legislative immunity does not apply to counties is against the precedent of this circuit.

Plaintiff's objections are:

1. the Magistrate Judge's failure to conclude that the Defendants are estopped to claim legislative immunity is erroneous;

2. the Magistrate Judge should have concluded that the suit against the commissioners is in fact a suit against the county;

3. it was error not to conclude that the Defendants waived legislative immunity;

4. it was erroneous to conclude that the county manager has the capacity to act as a legislative aide; and

5. Plaintiff objects to the alternate recommendations.

2. The first commandment is depicted in the courtroom as, "Thou shalt have no other god

As noted above, the Court conducts a *de novo* review of the specific objections. However, Plaintiff's fifth objection is a general objection, containing no specific argument, and as such is not entitled to more than a careful review. *De novo* review is unnecessary "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir.1982); *see also, Lockert v. Faulkner,* 843 F.2d 1015, 1019 (7th Cir.1988).

### IV. DISCUSSION

■ Defendants maintain the decision to keep the Ten Commandments within the courtroom is entitled to legislative immunity. In support of their position, they submitted copies of the minutes from public sessions before the commissioners. The first such session occurred on September 8, 1994, prior to the time Plaintiff commenced this action. The minutes from that session state in pertinent part:

> During the Public Session, Mr. Richard Suhre approached the board seeking removal of the Ten Commandments from the Court Room wall. It was the unanimous opinion of the board that the Ten Commandments should remain on the Court Room Wall. Mr. Suhre is seeking legal counsel in this matter.

Exhibit A, *attached to* Defendants' Motion to Dismiss Third Amended Complaint. Eleven days later, Plaintiff initiated this suit. The minutes from the September 22, 1994, meeting provide in pertinent part:

> During the Public Session, numerous Haywood County citizens expressed their support of the stand the Board of County Commissioners and the County Manager have taken concerning the pending lawsuit regarding the removal of the Ten Commandments from the courtroom wall. Several petitions were presented to the board, bearing over 1,500 signatures in support of the Ten Commandments remaining in the courtroom. Chairman Russell stated that

before me."

the board is unanimously opposed to the removal of the plaques, that they are part of the courthouse and if anything an historical part of the courthouse. The board expressed their opinion that this country was founded on the principles of the Ten Commandments and that they would remain in the courtroom until their removal is forced by a court of law.

*Id.,* at Exhibit B.

In opposing summary judgment, Plaintiff claims the above actions constitute administrative, not legislative, conduct; and thus, are not entitled to immunity. The Magistrate Judge, after recounting a thoughtful summary of the law, determined the actions were administrative. This Court respectfully declines to join in that conclusion.

▆▆▆▆ County legislators have absolute immunity from suit for decisions made in their capacity as legislators. *Front Royal & Warren County Industrial Park Corp. v. Town of Front Royal,* 865 F.2d 77, 79 (4th Cir.1989); *Scott v. Greenville County,* 716 F.2d 1409, 1422 (4th Cir.1983); *Bruce v. Riddle,* 631 F.2d 272, 280 (4th Cir.1980). The purpose of this immunity is not just to shield from liability but also from the burden of defending suits. *Collinson v. Gott,* 895 F.2d 994, 998 (4th Cir.1990) (Phillips, J. concurring).

> Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good.... The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of the judgment against them based upon a jury's speculation as to motives.... I will not confine [the immunity] to the delivering of an opinion, uttering a speech, ... but will extend it to the giving of a vote, ... and to every other act resulting from the nature, and in the execution, of the office.

*Bruce, supra* (quoting *Tenney v. Brandhove,* 341 U.S. 367, 374, 377, 71 S.Ct. 783, 787, 788, 95 L.Ed. 1019 (1951)). Despite this simple premise, the distinction between legislative and administrative acts is not always concrete.

▆▆▆ Local legislators who voted for the enactment of a zoning ordinance were absolutely immune from suit by a disgruntled landowner despite their prior meetings with partisan groups. *Bruce, supra.* However, "[w]hen local zoning officials do more than adopt prospective, legislative-type rules and take the next step into the area of enforcement, they can claim only the executive qualified immunity appropriate to that activity." *Scott,* 716 F.2d at 1423. Thus, enforcement of policy is distinct from conception and enactment of public policy. *Id.* Where local legislators have no discretion to approve or disapprove a request, deliberate refusal to proceed is an executive act, not legislative. *Front Royal,* 865 F.2d at 79. By the same token, making a statement which represents a policy decision to do that which is in the best interests of the citizens is a legislative act. *Id.* Even the act of evicting a citizen from a public hearing to ensure order and decorum is a legislative act entitled to absolute immunity. *Collinson,* 895 F.2d at 1008–09 (Phillips, J. concurring). And, "[w]here ... [a] suit would require legislators to testify regarding conduct in their legislative capacity, the doctrine of legislative immunity has full force." *Hollyday v. Rainey,* 964 F.2d 1441, 1443 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 636, 121 L.Ed.2d 567 (1992); *Schlitz v. Virginia,* 854 F.2d 43 (4th Cir.1988).

Plaintiff claims the commissioners acted in an administrative capacity, merely approving the continued presence of the Ten Commandments in the courtroom. He analogizes their conduct to that of administering the upkeep and maintenance of the courthouse itself. Moreover, Plaintiff points out that the Board never actually passed an ordinance concerning the Ten Commandments, and thus, could not have been acting in a legislative capacity. A "local governmental body only acts in a legislative capacity when it engages in the process of 'adopting prospective, legislative-type rules'." *Roberson v. Mullins,* 29 F.3d 132, 135 (4th Cir.1994).

It appears the Ten Commandments have been a part of the courtroom since its construction in 1931. Third Amended Com-

plaint, at 1–2. Nonetheless, their presence had not been in issue until September 8, 1994, when Plaintiff appeared at the public session of the commissioner's meeting seeking their removal. The commissioners' response was prompt and unanimous: the Ten Commandments would remain in the courtroom. Plaintiff could take whatever legal action he desired. While no formal ordinance was adopted, it was clear their action was prospective. Indeed, at the next meeting, the Board stated they would continue to maintain the Commandments in the courtroom until ordered by a court to remove them.

Such action constituted a policy making decision on behalf of the citizens of Haywood County. *Front Royal, supra.* "For the local official, legislative policy is determined in part through public meetings." *Collinson, supra.* The lack of an ordinance is irrelevant. *Schlitz, supra.* The Board and Manager engaged in the process of adopting a prospective rule: the Ten Commandments could and would be displayed in the courtroom. Such action is not commensurate with housekeeping duties. Because the commissioners acted in their legislative capacity when they proclaimed the continued presence of the commandments, they are absolutely immune not just from liability but from defense of this suit.

■ Because the commissioners are entitled to legislative immunity, they are protected from testifying concerning their motives for refusing to remove the commandments. *Schlitz,* 854 F.2d at 45–46. The prosecution of this litigation would entail depositions of the individual commissioners "regarding conduct [taken] in their legislative capacity." *Hollyday, supra.* Where the defense of the case would require the commissioners to testify about their legislative conduct and their motives, legislative immunity precludes the suit. *Baker v. Baltimore,* 894 F.2d 679, 682 (4th Cir.), *cert. denied,* 498 U.S. 815, 111 S.Ct. 56, 112 L.Ed.2d 31 (1990); *Schlitz, supra.* This is another ground on which the motion must be granted.

■ Plaintiff argues the Magistrate Judge should have determined that his suit against the commissioners in their official capacities really amounts to a suit against the county.

[W]e reject plaintiff's argument that he can circumvent the doctrine of legislative immunity by declining to name as defendants individual legislators. The purpose of the doctrine is to prevent legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves.... Thus, the naming of the [county] as the sole defendant does not save this lawsuit.

*Schlitz,* 854 F.2d at 46 (citations omitted). The only manner in which the county would be able to defend this suit would be through the testimony of the commissioners as to their conduct taken in connection with legislative action. Thus, the county as well is immune from suit. *See, also, Baker,* 894 F.2d at 682; *Hollyday,* 964 F.2d at 1443.

■ The same reasoning applies to the suit against the county manager. Even if the commissioners and the county are no longer Defendants, the defense of the county manager would entail testimony from not only the manager but also individual commissioners about their legislative conduct. Thus, the action must be barred. *Baker,* 894 F.2d at 682; *Hollyday,* 964 F.2d at 1443 n. 1.

It is therefore unnecessary to reach Plaintiff's objection to the Magistrate Judge's finding that the county manager may act as a legislative aide.[3] There also is no need to reach the Defendants' objection to the Magistrate Judge's failure to conclude that the county has legislative immunity. This action is barred as to those Defendants because the defense of their case would necessarily entail testimony by commissioners, or the manager himself, about the motives of the county legislators in adopting a prospective policy or rule on behalf of the county's citizens. Thus, this Court need not reach these issues. *See, e.g., Hollyday,* 964 F.2d at 1444–46 (Luttig, J., concurring in the judgment and concurring in the opinion in part); *Roberson,* 29 F.3d at 135 n. 5 ("**If a local governmental body itself ... is ever entitled to absolute**

---

3. However, the Court notes precedent for this ruling. *Baker, supra.*

legislative immunity, it is only when the body engages in 'legislative' actions").

 Because this Court declined to follow the Magistrate Judge's recommendation, the Defendants' objection to the use of First Circuit precedent by the Magistrate Judge is moot. Plaintiff's objections concerning waiver and estoppel are addressed briefly. The Chairman of the Board of Commissioners stated at a public session the unanimous opinion of the board that the commandments remain in the courtroom. At a second meeting, he stated the unanimous opinion of the board that the plaques remain on the wall in view of their historical nature and in view of the principles of our founding fathers. The statements made at the public sessions of the Haywood County Board of Commissioners' meetings do not constitute a waiver of rights but a statement of the commissioners' determination of public policy. The cases cited by the Plaintiff do not support his contention. In *Marylanders for Fair Representation v. Schaefer,* 144 F.R.D. 292, 298 (D.Md.1992), a divided panel simply observed without holding that an individual legislator may waive or assert immunity because it is a personal privilege. In *United States v. Craig,* 528 F.2d 773, 780 (7th Cir.1976), a state legislator was found to have waived his privilege of immunity by testifying. But, the court also noted that this legislator could not waive immunity on behalf of any other legislator or the legislative body. *Id.,* at 780–81 n. 7.

▪ Plaintiff cites estoppel as another reason why immunity may not be claimed. Apparently, prior to the third amendment of the complaint, the parties had reached an agreement to depose certain commissioners. Response to Motion for Protective Order, filed December 16, 1994, at 3. Based on this alleged agreement, Plaintiff claims Defendants are estopped from asserting immunity. Without considering what issues Defendants may have agreed to allow depositions to cover, an agreement by attorneys, later withdrawn, does not constitute estoppel of legislative immunity.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' motion to dismiss for failure to state a claim upon which relief may be granted, converted to a motion for summary judgment by Order of June 2, 1995, is hereby **GRANTED** and the case will be dismissed as to all Defendants by way of Judgment filed herewith.